United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CUPP,<br><br>        Plaintiff,<br><br>    v.<br><br>TA FINTECH, INC.,<br><br>        Defendant. | Case No.  25-cv-07479-TSH<br><br>**ORDER DENYING SECOND MOTION<br>TO DISMISS**<br><br>Re: Dkt. No. 37 |

## I.    INTRODUCTION

Plaintiff Ronald Cupp brings this case against Defendant TA Fintech, Inc. for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, et seq., arising from text messages and voice calls sent to his cellular telephone.  Pending before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 37.  Plaintiff filed an Opposition (ECF No. 38) and Defendant filed a Reply (ECF No. 39).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 4, 2026 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **DENIES** the motion.[1]

## II.    BACKGROUND

Plaintiff resides in Rohnert Park, California.  First Am. Compl. ¶ 5, ECF No. 36.  He identifies Defendant as a Delaware corporation doing business as "Trade Algo" and "Trade GPT," and alleges it is a national sales organization selling memberships and trading-related services via telephone and text.  *Id.* ¶¶ 6-7.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 2, 19.

United States District Court
Northern District of California

Plaintiff alleges that between April 20, 2024 and May 16, 2024, Defendant sent him at least 105 unsolicited text messages and placed voice calls to his cellular telephone number, 707-318-9929, using an automatic telephone dialing system (ATDS), and that he did not provide prior express consent. *Id.* at 1 & ¶¶ 8-9, 19.

According to the complaint, Defendant began sending Plaintiff text messages and placing calls on or about April 20, 2024, from 5-digit short codes including 40591 and 61893, promoting Defendant's trading-related services, including "AI" trading signals and membership offerings. *Id.* ¶¶ 8, 12-13. Plaintiff alleges the messages arrived in recurring daily patterns at approximately 7:55 a.m., 11:55 a.m., and 5:55 p.m., used substantially similar or templated wording, and were sent in a high-volume, campaign-like cadence over less than 30 days. *Id.* ¶¶ 14-15. Plaintiff asserts these facts, (the use of short codes, recurring timing, uniform content, and sustained volume) support a reasonable inference that Defendant used automated equipment to store telephone numbers and send mass text messages, and that details of the equipment are within Defendant's possession. *Id.* ¶¶ 17-18.

Plaintiff also alleges he revoked any purported consent through multiple means and that Defendant continued contacting him thereafter. *Id.* ¶¶ 20-23. The complaint alleges revocation by direct responses to messages, telephone calls, and communications to Defendant's personnel and offices, as well as a certified-mail notice dated May 6, 2024 requesting that the calls and texts cease and advising of potential legal action, yet Defendant continued to contact him. *Id.* ¶¶ 21-23.

Plaintiff attaches as Exhibit A a chronological log identifying dates and times of the text messages and calls, and as Exhibit B representative screenshots of the messages. Exhibit A includes entries of repeated "TEXT" events on numerous dates and times between April 21 and May 16, 2024, including clusters at or about 7:54–7:58 a.m., 11:54–11:59 a.m., and 5:54–5:57 p.m. ECF No. 36-1. Exhibit A also reflects multiple phone interactions on April 22, 2024 and April 26, 2024 involving numbers identified as "SETH W/TRADE ALGO" and "ROB," as well as April 29, 2024 entries noting that "SETH TEXT HE WOULD REMOVE/STOP CALLING AND TEXTING ME—PUT ON DO NOT CALL LIST." *Id.* at 1-2, Exhibit B contains screenshots of text messages from short code 40591 and short code 61893 promoting Trade Algo or TradeGPT

live sessions, "Dark Flow AI" or "AI" trading data, and links such as "bit.ly/TALive8," with recurring timestamps around 7:54–7:58 a.m., 11:54–11:59 a.m., and 5:54–5:57 p.m. ECF No. 36-2. Several screenshots show Plaintiff responding with requests to stop, including "Do not contact me again," "Stop this," "Please stop and do not contact me further," and "No more please any further, I will sue." *Id.* at 2, 5, 57. Other screenshots reflect a text exchange with number +1 (646) 690-1062 in which the sender states "ok we will put you on the do not call list," following Plaintiff's statement "I have Told you and Seth to stop calling and sending text messages," and a statement "If you arent [sic] interested you can just tell me and we will stop wasting both our times." *Id.* at 99, 101.

Plaintiff filed this case on September 4, 2025, bringing one claim for violation of the TCPA. Compl. ¶¶ 19-25, ECF No. 1. On February 13, 2026, Defendant moved for dismissal under Rule 12(b)(6). ECF No. 28. On March 27, 2026, the Court granted Defendant's motion, finding Plaintiff's claim failed because he did not adequately allege Defendant used an ATDS to contact him. ECF No. 35; *Cupp v. TA Fintech, Inc.*, 2026 WL 852048, at *1 (N.D. Cal. Mar. 27, 2026). The Court noted Plaintiff did not allege Defendant's equipment generated telephone numbers at all, much less randomly or sequentially. The Court granted Plaintiff leave to amend to add allegations in support of his TCPA claim.

Plaintiff filed the operative First Amended Complaint on April 13, 2026, alleging one claim for violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). He seeks statutory damages of $500 per violation and up to $1,500 per knowing or willful violation, based on at least 105 text-message violations identified to date, and injunctive relief prohibiting further unlawful calls and texts to his cellular telephone.

Defendant filed the present motion on April 27, 2026.

### III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8

United States District Court
Northern District of California

3

provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

The TCPA makes it unlawful for any person to make a call (other than for emergency purposes) using any ATDS or an artificial or prerecorded voice made without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). It creates a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *Id.* §

4

227(c)(5). To make a claim under the TCPA, a plaintiff must show: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

The Court finds Plaintiff has adequately pled the first element, as he alleges Defendant called and texted his cell phone at least 105 times. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (a text message is a "call" for purposes of the TCPA); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) ("The Court concludes that a 'telephone call' as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of.").

As to the second element, Defendant argues Plaintiff's claim fails because he does not adequately allege it used an ATDS to contact him. Mot. at 3-5. The TCPA defines ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Supreme Court has clarified that for equipment to qualify as an ATDS under the meaning of the TCPA, it "must use a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 (2021). This is "a necessary feature of an autodialer under § 227(a)(1)(A)" because if the requirement were simply that a telephone have the capacity to autodial stored phone numbers that had not been randomly or sequentially generated in the first instance, such interpretation "would capture virtually all modern cell phones, which have the capacity to store numbers to be called and dial such numbers." *Id.* at 405-06 (cleaned up).

In his amended complaint, Plaintiff does not explicitly allege the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. Instead, he alleges "[t]he repeated use of short code numbers, the recurring timing pattern, the substantially uniform message content, and the sustained high-volume campaign are circumstantial facts supporting a reasonable inference that Defendant used automated equipment to store telephone numbers and send mass text messages to cellular telephones." First Am. Compl. ¶ 17. Defendant argues these changes "do not cure the defect the Court identified" in its prior order because he still

United States District Court
Northern District of California

does not allege it used equipment that "randomly or sequentially" generated Plaintiff's telephone number.  Mot. at 1.

Taking Plaintiff's allegations in the light most favorable to him, the Court finds he adequately sets forth factual allegations that support a reasonable inference that an ATDS was used.  A plaintiff "need not somehow have inside knowledge of a defendant's operations and equipment to survive dismissal under Rule 12(b)(6), rather, he or she merely must proffer factual allegations that support a reasonable inference that an ATDS was used." *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, 2017 WL 733123, at *8 (N.D. Cal. Feb. 24, 2017) (citing *Brown v. Collections Bureau of Am., Ltd.*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016)).  Plaintiff has presented evidence of automated, high volume, short-code mass calling and texting on a regimented schedule with identical content.  Because it may be difficult to identify the specific type of dialing system used without the benefit of discovery, post-*Duguid* courts have allowed TCPA claims to proceed beyond the pleading stage where a plaintiff's allegations support the inference that an ATDS was used.  *See, e.g., Prosser v. USHealth Advisors, LLC*, 2023 WL 5093872, at *3 (E.D. Mo. Aug. 9, 2023) ("While USHA is correct that Plaintiff must eventually show the system used meets *Duguid*'s definition to prevail on his ATDS claim under the TCPA, the pleading standard does not require Plaintiff to plead such 'technical matter'") (quoting *Duguid*, 592 U.S. at 407); *Escano v. Ins. Supermarket Inc.*, 2023 WL 9023273, at *3 (D.N.M. Dec. 29, 2023), *report and recommendation adopted,* 2024 WL 5714615 (D.N.M. Jan. 17, 2024) ("[A] plaintiff is permitted to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used.") (quotations and citation omitted); *Callier v. MultiPlan, Inc.*, 2021 WL 8053527, at *17 (W.D. Tex. Aug. 26, 2021) ("To require Plaintiff to plead the specifics of the technology used to place harassing calls would raise the pleading standard for TCPA claims impermissibly high."); *Jance v. Homerun Offer, LLC*, 2021 WL 3270318 at *3 (D. Ariz. July 30, 2021) (collecting cases and finding that whether a defendant used an ATDS is often a fact exclusively within the defendant's possession); *Atkinson v. Pro Custom Solar LCC*, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) ("As a practical matter, no plaintiff will have personal knowledge of the

United States District Court
Northern District of California

United States District Court
Northern District of California

defendant's telephone system at the pleadings stage. Only the defendant has that knowledge. However, Plaintiff has pled enough facts to proceed with discovery, at which time she will have the opportunity to discover the precise technology that was used at the time of the alleged violation(s). If the technology does not meet the definition set forth in the statute, as construed by the Supreme Court in *Facebook, Inc. v. Duguid*, then Defendant may move for summary judgment on that basis.").

Defendant argues Plaintiff's amended complaint fails to address whether it used equipment that randomly or sequentially generated Plaintiff's telephone number in the first instance, and that his own allegations show "he may have provided consent." Mot. at 3-5 (citing *Borden v. eFinancial LLC*, 53 F.4th 1230, 1231–32 (9th Cir. 2022); *Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022)). *Borden* held that a TCPA plaintiff must allege the defendant caller used an ATDS to generate telephone numbers, and that it is not sufficient to allege that an auto dialer was used to randomly call stored phone numbers that had not been randomly or sequentially generated in the first instance. 53 F.4th at 1234. As such, using an auto dialer to select which already-obtained-and-stored numbers to call does not violate the TCPA. *Id. Brickman* similarly held that a plaintiff alleging the caller used an ATDS (specifically, a "random or sequential number generator" to select *which* stored phone numbers to text, had not adequately pled that the caller used an RSNG to generate those phone numbers. 56 F.4th at 690. But in *Brickman*, the lower court explained that whether the caller impermissibly used an ATDS to generate the plaintiff's phone number is generally a summary judgment question, not a pleading issue:

> [S]ome courts have considered the determination of whether a plaintiff has plausibly shown the use of an ATDS covered by *Duguid* to be more appropriately resolved on summary judgment than at the pleading stage. But in many of those cases, the plaintiffs alleged they had *never* provided defendant with their phone numbers in the first place, making it at least plausible that a prohibited number generator had been used to produce or store the numbers called.

*Brickman v. Facebook, Inc.*, 2021 WL 4198512, at *3 (N.D. Cal. Sept. 15, 2021), *aff'd sub nom. Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022); *see also Scherrer v. FPT Operating Co., LLC*, 2023 WL 4660089, at *5 n.6 (D. Colo. July 20, 2023) ("Even assuming the definition of an ATDS requires that a stored list of telephone numbers be itself created randomly or sequentially,

7

such an issue is better decided at the summary judgment stage of litigation.") (collecting cases). As such, the Court finds dismissal on this ground would be inappropriate. Further, accepting the pleadings as true, the Court cannot find that Plaintiff provided his telephone number, as he alleges he did not provide consent (or at least revoked consent). *Compare Davis v. Rockloans Marketplace, LLC*, 2023 WL 6378067, at *2 (S.D. Cal. Sept. 28, 2023), *rev'd and remanded on other grounds,* 2024 WL 4345293 (9th Cir. Sept. 30, 2024) (dismissing TCPA claim without leave to amend because "Plaintiff does not deny that she gave Defendant her cellular telephone number when she applied for and received her loan from Defendant."). Other cases have similarly concluded that "the precise source of the number and the text is a fact often within the defendant caller's exclusive possession, and that it is difficult to plead that factual question with specificity absent formal discovery." *Walker-Schaut v. Lido Labs Holding Co.*, 2024 WL 2702007, at *7 (W.D. Wash. May 24, 2024). As such, this is not grounds for dismissal.[2]

The Court finds Plaintiff has also adequately pled the third element. Defendant argues "Plaintiff's own allegations likewise suggest TA Fintech's contacts were not random. He alleges that he may have provided consent." Mot. at 5 (citing First Am. Compl. ¶¶ 20-21, 31). The Ninth Circuit has held that a defendant may avoid liability by establishing that it had prior express consent. *See Satterfield*, 569 F.3d at 955 ("[T]he TCPA exempts those calls 'made with the prior express consent of the called party.'") (quoting 47 U.S.C. § 227(b)(1)(A)). But here, Plaintiff alleges "Defendant made the calls and sent the text messages without Plaintiff's prior express consent, or, alternatively, after any such consent had been revoked." First Am. Compl. ¶ 31. Regardless, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Defendant's argument that Plaintiff "may have provided consent" does not satisfy this burden.

---

[2] Defendant also argues the amended complaint "not only fails to plead random or sequential number generation; it affirmatively points toward communications directed at a specific, known number." Mot. at 5. Defendant cites to Plaintiff's exhibits, which identify specific individuals who allegedly contacted him. *Id.* (citing ECF No. 36-1; ECF No. 36-2 at 8–10, 12, 100–02). However, these entries appear to indicate Plaintiff's personal notes or communications related to his attempts to get the calls and texts to stop.

United States District Court
Northern District of California

In sum, while Defendant argues the amended complaint must be dismissed because it still does not allege that TA Fintech used equipment that 'randomly or sequentially' generated Plaintiff's telephone number, the Court finds the amended complaint, read as a whole, contains "sufficient facts to show that it is plausible" that Defendant used an ATDS. *Twombly* and *Iqbal* do not require a plaintiff to possess or to plead evidence. Rather, "detailed factual allegations are not required," and a complaint need only have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The Court finds Plaintiff has met this standard.

## V.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss. Defendant shall file its responsive pleading by June 15, 2026. The Court shall conduct a case management conference on July 16, 2026 by Zoom video conference. The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/. This conference shall be attended by lead trial counsel. Parties who are not represented by counsel must appear personally. By July 9, 2026, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders. The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.

**IT IS SO ORDERED.**

Dated: June 1, 2026

THOMAS S. HIXSON
United States Magistrate Judge

9